For the appellant, we have Kevin Hastings. That's right, Your Honor. Good morning, Your Honors. Kevin Hastings on behalf of the plaintiff appellant. I would like to reserve five minutes for my rebuttal. Mr. Hastings, please try to watch the time. It's basically up to you to stop before all your time is done. Absolutely. But we can try to remind you, if a judge is in the middle of asking you questions of concern to them at the time, then you're probably better off answering their questions than reserving time. I would agree with that. Thank you, Your Honor. For nearly the last 30 years, Washington State has been on the vanguard of allowing survivors of sexual abuse to bring lawsuits and claims for damages for harms that occurred many, many years ago. In 1991, Washington State Legislature recognized this issue and allowed these claims to be brought by enacting RCW 4.16340 to allow for broad avenue of redress for these claims to be brought. For the last 30 years, Washington State courts interpreting this statute have allowed claims of this nature to go forward into trial, even though the harms occurred many years ago. CJC was one of the first decisions to recognize that the legislature intended a broad reading and application of this statute limitations. And we are here today to ask this court to uphold the Washington State Legislature and will of the people to reverse summary dismissal of AT's claims. The first argument that we would like to present and that we made below, the first argument that we made below that wasn't considered by the district court is that the AT did not make any connection that she had a claim against the school district for negligent supervision and retention until approximately 2015 after she had spoken to a friend who was also an attorney. There's no evidence in the record prior to that date that she had connected the fact that she, her abuse, her damages were the cause of the district. There is a distinction to be made between Mr. Craig Verver as the alleged perpetrator and the district as the entity that was involved with supervising AT when she was a student. The evidence submitted in opposition to this argument is simply that AT knew that what her teacher had done was wrong and she at one point wanted to report him. Counsel, is the teacher Verver still in this case or has he settled or otherwise been dismissed? He has been dismissed. Your Honor, the claims against him individually were under 1983. The district court dismissed those claims as well and we did not appeal those claims. So Mr. Craig Verver is no longer a party to this case. Thank you. So what you have is a situation where the intentional tortfeasor, as it were, is no longer responsible for the case, but the negligent supposed tortfeasor might be. That's correct, Your Honor. And if we look at the Washington cases, starting with Funkhauser, Funkhauser was an interesting case because it was decided right around the time that the legislature was enacting 4.16340 and it was actually decided on common law grounds. And in that decision, it articulated the point of law that under the discovery rule involving claims of child sexual abuse, the statute does not begin running until one would discover all of the claims, all of the elements to a cause of action. That was subsequently repeated in the Cloud case, which was a case that was interpreting the 4.16340 case. And the district appears to have conceded in its brief that this is Washington law, that we need discovery of all the elements. There has to be an element of injury for the claim to accrue, but how much injury has to be shown before that happens? And that's a great question, Your Honor. So if we're moving on to the causation and damages element, we would submit that even if we set aside the issue that the AT did not discover that she had a claim against the school district for negligent supervision and retention, that she also did not discover the full extent of her damages. If we look closely at that issue, the district court did a full reason analysis and really found this case to be very similar to Carollo. It does appear remarkably similar. Can you tell me where the district court erred in its analysis? Yes, Your Honor. Absolutely. The critical factor with Carollo is that, and as it recognizes in Distinguished Shane Hallman, as well as the Coarse case, that there was no allegation by the plaintiff in that case that he did not connect the harms to the abuse. And that's the missing element here, because what we have is a case where AT was in what some may describe as a relationship with this individual, what she is in fact described as a relationship with this individual, and had no understanding that it was in fact a harmful, abusive relationship that started when she was a minor and very impressionable and had long-lasting impact. All of the statements that... I thought that she had connected it to the abuse earlier when she went into counseling and indicated all the issues that she had and the self-harm and connected it to the harmful relationship that she had with this teacher. I would disagree with that, Your Honor. I think that if you closely look at the medical records, there's no evidence that it was connected. We don't have any testimony from any of the treating providers saying that she connected it. We don't have anything other than records themselves. But the records themselves are less than clear. Let's take, for example, the 2013 record. And this was after she had... She presented at this treating appointment, and she was talking about how she was in a certain aspects of that. She's dealing with gender stuff and just wants someone besides friends or family to talk about that. Also, ongoing issues around an abusive relationship. And then there was a diagnosis at the end of an adjustment disorder. There's no connection between the sexual abuse and that disorder. She was presenting... So you're saying that the counseling records and the journal entries don't show that she connected the issue she'd been suffering to the abuse? That's correct, Your Honor. That's absolutely correct. When you say that there's a recognition that I've suffered damages, that falls under coursed, which is that, of course, someone who's sexually abused is going to understand that they were damaged. But this case is a little bit more sinister than that because this is not a situation where there was one instance of a rape where everyone knows is horrific and horrifying, or a clear five-year-old who was molested by someone in their family, where you have this idea all along that this is a really horrible thing. What we are seeing in these records is a discovery from her only that she was in an abusive relationship. That's it. That's not a connection of the damages for which she is seeking to recover or address. There's a difference between that. There's a difference between knowing that you're... Learning that you're damaged or understanding that you were damaged in so far as being abused, and then the actual lifelong effects of that and how that impacts the trajectory of your life. Isn't there some evidence in the record from the bishop that as early as 2003, she saw the relationship as harmful? Right. So again, Your Honor, that would fall under the coursed variety. Coursed is a case in You know that it caused some amount of harm. The critical fact is that it is not until you discover the full extent of your harm that the statute begins to run. And here we don't have a showing that she discovered the full extent of her harm. At most, what we have are a few sexually abused or in an abusive relationship, but there's nothing connecting the fact that she was in this abusive relationship to the damages that she suffered. There's no therapist testimony saying that she made that connection in front of me or I helped her make that connection. All there is is evidence that she did not make that connection as she testified. And she testified that she... For example, here's part of the problem with the reasoning. This is on ER 27, which is page 20 of the order. The district court said that as A.T. herself explained, and he's citing the deposition testimony, I've experienced nightmares and different manifestations of PTSD, anxiety kind of things, hypervigilance ever since things began with Craig Verver in an inappropriate and secretive way. I don't know when I would call that PTSD because my understanding of that's involved. And then the conclusion is thus in the light most favorable to A.T., there's no genuine issue of material fact that A.T.'s problems associated with PTSD are at most a quantitative difference from her previous problems for which she received a diagnosis in April 2010. The problem with this reasoning is that all that A.T. is explaining here is that she experienced nightmares and different manifestations of PTSD. No point in this is she saying that she connected this to the harms. At no point in this testimony does she say she connected that with what happened to her and she made this connection in 2012 or 13. So it's one thing to say that you have symptoms and you're suffering, and it's another thing to understand that there's a connection there. And that's the missing element here that was not even disputed in Corollo. And that's the difference. This is much more on all fours with the Holloman case where we have a situation where in that case there was an individual who presented to therapy and was diagnosed with PTSD and had a litany of symptoms. And then years later brought a lawsuit. The Court of Appeals allowed that lawsuit to go forward because there was no evidence that he connected those issues to being abused. One of the things that that case cited, which is interesting and applicable here, is that he thought that the relationship was consensual. And I think that that's a point that we need to consider when evaluating these facts as well. Plaintiff would submit that taken in the light most favorable to AT, the district court improperly dismissed her claims and should have allowed these issues to go forward for a fact finder to determine when she in fact discovered. At a minimum, the court disregarded plaintiff's initial argument, their first argument, that she had not discovered that she had a liability action against the school district, which is separate and distinct from a liability action against Mr. Berger. And for those reasons... Counsel, do you want to reserve some time? Yep, absolutely. And for those reasons, we would ask the court reverse and remand. Thank you. I didn't practice, Judge. I apologize. I will go ahead and lean over a little bit. May it please the court, my name is Charles Leach. I am the attorney for Everett School District here today. I apologize if I cough. I'm still fighting the fall bug, and I apologize to the record if it reflects that. This case, we would ask that the court affirm the district court decision. We believe the order is well rationaled and laid out. In particular, the facts in this case are entirely different than any of the cases that are cited in the record. In particular, the reliance on Korst, Funkhauser, or Holman are easily distinguished from the present facts. This case does not involve, like those cases, an individual who experienced sexual abuse at the age of 8 or 13 or 12, but an individual that entered into an abuse scenario, there's no question in the record, at the tail end of her experience in high school, and then continued for nine years. Over which that time period, the record is clear, she engaged in a process of revelation and realization relative to the harm that relationship caused. The record has a variety of evidence, starting in 2003 with Bishop Salmon, an elder of the Latter Day Saints church that she went ahead and met with, who informed her it was inappropriate, asked her to report it. Also asked her and actually put her in the record on the phone with Mr. Verver, wherein she was going to tell him she was going to report it to the school. Continuing on from there, we have a timeline in the record that goes on and on from 2006, where we have an entry where she talks about possible damage in journals about issues with Mr. Verver, actually working them out, going through further to 2009 when she had an episode in a French class that she attributed to her relationship and the related impact with Mr. Verver. Then culminating at that point, which when she was in a doctoral program at UCLA with therapy, starting in 2010 and going to 2011, of which a topic, and we have all these in the record, of discussion about the impact of the notwithstanding even that, in 2012, she goes ahead and she emails her advisor at UCLA and specifically articulates the concerns related to the impact that her relationship with Craig Verver, which in 2012 she ended, upon her ability to go ahead and work within the PhD program and to teach in a classroom setting. She then also went and studied abroad at Cambridge, where she received by her own testimony 10 sessions of therapy related to the impact, certainly in part, of the relationship of Craig Verver. Then the district court focuses on May 2013, upon her return to UCLA, wherein she fills out an intake form and engages in therapy, where she goes ahead and acknowledges the impact of that relationship at the outset of the therapy and is diagnosed for the third time with an adjustment disorder with anxiety. Now- Counsel. Sure. How do you respond to the argument that she hadn't discovered that the school district might be liable for not protecting her? Sure. First and foremost, the reliance that the plaintiff, the appellant, places on the Funkhauser case, which was the case before the Washington State Supreme Court and CJC found that RCW 416.340 applied to negligence defendants instead of just intentional actors. In this case, the record is replete with references to discussions of the power imbalance, of him being a teacher, of going through a process, even back when Bishop Salmon, his testimony in the record, talks about him being in a relationship with a married man who also works for the school district. That is consistent throughout the entire timeline, all the way up until the outset of the the district court in its order actually specifically cited to the Likovsky-Kivy City case on the Ninth Circuit, which said, knowing you have a legal cause of action is not a requisite to go ahead and bring a lawsuit. And to have that understanding would not, to not have that understanding does not toll the statute of limitations. In this case, further with regard to her concerns, she's a very, very articulate young lady through the course of her journaling. And she's very prolific in her writing, and it surrounds the power imbalance and the nature of that relationship. And all those discussions occur before 2013. And 2013 May is when, in specific, the district court found that her cause of action accrued. I want to say one thing about also the PTSD diagnosis, both in Korst, in Holman, and in Funkhauser. Well, Funkhauser was a suppression case. Korst, which involved a letter to a father essentially saying, complaining of rape after it had occurred, and that was found insufficient by the court of appeals. There was the testimony of two treating physicians that had treated her just in the course of her injury. Similarly, in Holman, there were two treaters that testified. And in that case, where there was a diagnosis of PTSD specifically, those two treaters specifically testified that Holman had not made the connection. And there was similar testimony in Korst, that the plaintiff had not made the connection. In Carollo, which the district court highlighted, and we believe is on point, there was a diagnosis of post-traumatic stress, and then subsequent testimony from treaters over the process by which this connection was made. And the quantitative testimony the court found in that case, and also the district court found, was just merely more of the same issues. In this case, PTSD only comes up in the record when there is a diagnosis, actually not diagnosis, excuse me, a complaint raised by the plaintiff in 2016 to her primary care physician. Nowhere in this case is there any treater or fact witness testimony wherein it is claimed she suffered from post-traumatic stress. There is adjustment disorder diagnoses when she was in treatment where she's discussing the power imbalance. There is also a discussion of all the symptomatology of what is later, plaintiff's expert in his declaration asserts, is manifestations of post-traumatic stress. But as counsel just cited to you in the record, and which was relied upon by the district court, there were nightmares, sleeplessness, anxiety, use of alcohol, self-harm, restlessness, inability to form relationships. All of those are discussed en masse throughout all of the testimony in the record. One thing that plaintiffs did not put in the record in opposition to the motion for summary judgment was any treater testimony explaining or expanding upon, or like the court encountered in Korst, or the court encountered in Holman, where there was a treater who said, I treated A.T. and I'm telling you under oath, she did not make the connection or has not made the connection until this date of the harm. And the statute language is very clear, so we don't necessarily need to go through the elements. It specifically says within three years of the time, the victim discovered that the act caused the injury for which the claim is brought. And the district court focused primarily on that language as to the act that caused the injury. It's not the diagnosis of the injury which goes to something different. And looking throughout this record, she was presenting with the symptoms that she asserts she deserves recovery for even before her, by her own admission, 2003. In fact, she was experiencing them by her own testimony when she was still in school, in the relationship with him while he should not have been doing this. In which school? At high school, excuse me, Judge. But unlike all those other cases, we have her journal entries, we have the records of treaters, we have the efforts she made to go ahead and address and deal with this. Her coming to the conclusion of her going ahead and breaking off the relationship in 2012, there was a lot going on there. And it's clear in the record that she was considering the impact at the time she made that decision. And one other thing I will just say, I just want to make it clear for the record, there's a variety of discussion by Dr. Kleiman of essentially her attempts to conceal herself and gender identity issues. And the district believes that's not supported anywhere by the record. That she was somebody who came out as genderqueer of her own decision and developed relationships, later in fact being married to another genderqueer individual. And that that is just another indication of a far reach. In disregarding that declaration and the evidence and the underlying decision, the district court looked again to Carollo v. Dahl, where there was a pre-existing post-traumatic stress disorder diagnosis, and then later on there were other diagnoses made as a part of the case of other ailments that conceivably, if we're going to go with diagnosis equals injury under the statute, that would have stopped the case and would have stopped it from being dismissed and would have allowed her to continue. So there's a lot of scrutiny of acts in the record that's argument and some, I guess, attempt by her to minimize that is very clear. And unlike a lot of these cases, this record is one that withstands scrutiny. Normally these types of cases don't come on dismissal. Certainly as someone who practices in that area, I will admit that. But in this case, and as the judge observed, the judges observed in this case that there was a limit to liberality under the revised code of Washington for either tolling or when a sexual abuse claim for a minor accrues. This one we believe is clear and would also believe that when faced with a question of whether a T connected her difficulties with abuse by Verver, we can only reach one conclusion and that's that she did, and she did it before the time in which they brought the case. And without any other questions, I'll sit down. So thank you, your honors. Thank you. Funkhouser, the court in Funkhouser said that Washington state common law that there are likely to, that are likely to delay recognition of the full extent of inflicted by the perpetrator of the abuse. There are likely to delay discovery that the abuse might have been prevented if persons having a special relationship with a child had not breached a duty to protect the child from abuse. Subsequently, in the Cloud case, Washington state appellate court held that the school district points to no evidence in the should have discovered his negligent retention supervision employee claim against the school district sooner than that. This is the point, this reflects Washington law that we have to have a discovery of all elements to the cause of action. The district has not shown that there are an absence of issues of material fact as to duty and breach. The undisputed evidence is that she did not discover that she had a retention claim, a supervision claim until 2015. On that basis alone, this court must reverse and remand for further proceedings. With regard to the causation and damages element, which is separate and distinct, I would urge the court to closely evaluate the medical records because none of those show that she made a connection to being abused and the subsequent harm. In fact, in the 2013 record that the district just indicated that it heavily relies on, there's a statement about the nightmares that, quote, she reported she recently came back to the U.S. after being overseas for studies and is experiencing weekly nightmares and difficulty falling asleep. And there's no connection that that is a result of being abused. There's no indication as to whether that was caused by a stressor because she was in a relationship with another individual at that time. There's no indication that those nightmares weren't because of an adjustment from living overseas and coming back to the United States, nothing. It's just a pure Antopim's, I'm sorry, A.T.'s testimony that she experienced nightmares and anxiety. There's no evidence that she connected that to the actual abuse. And that plays out over and over in the records. There are vague nebulous references to her being damaged or having suffered harm, but that is not enough. Okay, Counselor, I'm afraid your time is up. Thank you, Your Honor. One of the judges has a question. No, I don't. Thank you. Okay, thank you. This case shall be submitted. And we appreciate the excellent arguments on both sides of the case. Thank you.
judges: Gould, Nguyen, R. Collins